**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| PLKH Solutions, LLC; ProLink Holdings Corp., <br><br> Plaintiffs, <br><br> v. <br><br> Shire Leasing PLC, <br><br> Defendant. | No. CV-12-00875-PHX-GMS <br><br> **ORDER** |

Pending before the Court is Defendant Shire Leasing's Motion to Dismiss Complaint for Lack of Personal Jurisdiction. (Doc. 9.) For the reasons articulated below, the motion is **GRANTED**.[1]

## BACKGROUND

Plaintiffs PLKH Solutions, LLC, and ProLink Holdings Corp. (together, "ProLink") are Arizona entities that operated a business that sold GPS units for golf carts. (Doc. 1 ¶ 2.) These GPS units had a monitor that was placed near the roof of golf carts and, when the golf cart was driven up to the ball, showed the layout of the hole and identified yardages to the pin, as well as various traps to avoid. In October 2004, Kevin Clarke of Elumina Iberica, a UK company, approached ProLink about the possibility of

---

[1] Defendant's request for oral argument is denied because the parties have had an adequate opportunity to discuss the law and evidence and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

distributing the GPS units in Europe. (*Id.* ¶ 18.) ProLink and Elumina formed a distribution agreement, under which Elumina and Clarke could "purchase, service, support, and sell ProLink's GPS systems in various European countries." (*Id.* ¶ 20.) Elumina, thereafter, purchased $ 4.5 million in GPS units from ProLink on credit. After purchasing the GPS units, Elumina leased them to various golf courses at what are alleged to be inflated prices. Elumina's sales pitch to the golf courses was that GPS Ads, Ltd. would sell advertising to be displayed on the GPS programs, and return some or all of the revenue received from the advertising to the golf course. That way the golf courses would essentially make up the cost of the lease of the GPS units through the advertising revenue that it would receive back from GPS Ads. (*Id.* ¶¶ 22, 24-25.)

Defendant Shire Leasing, a UK company, was the originator and financer of the leases entered by Elumina and the golf courses. (*Id.* ¶ 29.) Shire then sold the leases to various European banks. (*Id.* ¶ 36.) In other words, Shire was allegedly the "financing arm" of the Elumina GPS venture. (*Id.* ¶ 28.)

Elumina, however, allegedly paid golf courses money Elumina represented as being from advertising revenue, but which was really only from leases to other golf courses for GPS units. (*Id.* ¶ 26.) ProLink alleges that Shire never conducted due diligence regarding Elumina, GP Ads, or the golf courses to determine whether the venture would pay off and whether ProLink had been or would be paid for its GPS units. (*Id.* ¶¶ 30-32.) ProLink alleges that these failures demonstrate that Shire and its directors were willing participants in and sought to conceal Elumina's scheme. (*Id.* ¶¶ 35, 42.) The Elumina lease arrangements eventually collapsed when no ad revenue materialized. ProLink never received the $4.5 million that it was allegedly owed for the GPS units sold to Elumina. (*Id.* ¶¶ 37, 40.)

On April 26, 2012, ProLink filed its Complaint against Shire, alleging that Shire aided and abetted fraud and conversion of ProLink's property, and engaged in fraudulent concealment and civil conspiracy with Elumina. (*Id.* ¶¶ 13-65.) On June 7, 2012, Shire moved to dismiss the complaint for lack of personal jurisdiction. (Doc. 9.)

**DISCUSSION**

**I.   LEGAL STANDARD**

The plaintiff bears the burden of establishing personal jurisdiction. *See, e.g., Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995). Once a defendant has moved to dismiss, "the plaintiff is obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction" over the defendant. *Cummings v. W. Trial Lawyers Assoc.*, 133 F. Supp. 2d 1144, 1151 (D. Ariz. 2001) (internal quotations omitted). "[M]ere allegations of a complaint, when contradicted by affidavits, are not enough to confer personal jurisdiction over a non-resident defendant." *Chem Lab Products, Inc. v. Stepanek*, 554 F.2d 371, 372 (9th Cir. 1977); *Data Disc, Inc. v. Sys. Tech. Assocs.,* 557 F.2d 1280, 1285 (9th Cir. 1977) ("[W]e may not assume the truth of allegations in a pleading which are contradicted by affidavit.") The court may look to affidavits submitted by the parties in its determination. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). However, "conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiffs'] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

Because no statutory method for resolving the personal jurisdiction issue exists, the district court determines the method of its resolution. *See Data Disc, Inc. v. Sys. Tech. Assocs.,* 557 F.2d 1280, 1285 (9th Cir. 1977) (citing *Gibbs v. Buck*, 307 U.S. 66, 71-72 (1939)). A district court may, but is not required to, allow discovery to help determine whether it has personal jurisdiction over a defendant. *See id.* at 1285 n.1. In addition, a district court may, but is not required to, hear evidence at a preliminary hearing to determine its jurisdiction. *See id.* at 1285 n.2. If the district court does not hear testimony or make findings of fact and permits the parties to submit only written materials, then the plaintiff must make only a prima facie showing of jurisdictional facts to defeat the defendant's motion to dismiss. *See Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 268 (9th Cir. 1995). Under this prima facie burden of proof, the plaintiff need only

establish *facts*, through admissible evidence, that if true would support personal jurisdiction over the defendant. *See Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). The Court has determined to proceed on the written materials submitted by the Parties. Accordingly, ProLink's request for discovery is denied.

## II.     ANALYSIS

### A.     The Test

To establish personal jurisdiction over Shire, ProLink must demonstrate that (1) Arizona's long arm statute confers jurisdiction, and (2) that "the exercise of jurisdiction comports with the constitutional principles of Due Process." *See Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) (citation omitted). Because Arizona's long-arm statute extends jurisdiction "to the maximum extent permitted by the . . . Constitution of the United States," the personal jurisdiction inquiry largely collapses into a Due Process analysis. *See* Ariz. R. Civ. P. 4.2(a); *Davis v. Metro Prod., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989); *Williams v. Lakeview Co.*, 199 Ariz. 1, 5, 13 P.3d 280, 282 (2000). Absent traditional bases for personal jurisdiction (i.e., physical presence, domicile, and consent) the Due Process Clause requires that nonresident defendants have certain "minimum contacts" with the forum state such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

"In determining whether a defendant had minimum contacts with the forum state such that the exercise of jurisdiction over the defendant would not offend the Due Process Clause, courts focus on 'the relationship among the defendant, the forum, and the litigation.'" *Brink v. First Credit Resources*, 57 F. Supp. 2d 848, 860 (D. Ariz. 1999) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). If a defendant's contacts with the forum state are sufficient to satisfy the Due Process Clause, then the Court must exercise either "general" or "specific" jurisdiction over the defendant. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-15 nn.8-9 (1984); *Ziegler*, 64 F.3d at 473. The nature of a defendant's contacts with the forum state will determine whether the

Court exercises general or specific jurisdiction over him. *Helicopteros Nacionales*, 466 U.S. at 414-15 nn.8-9. No party contends that the Court has general jurisdiction over Shire.

The Ninth Circuit applies a three-part test to determine whether a defendant's contacts with the forum state are sufficient to subject him to the state's specific jurisdiction. Under this three-part test, specific jurisdiction exists only if: (1) the defendant *purposefully availed* himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws, or purposely directs conduct at the forum that has *effects* in the forum; (2) the claim *arises out of* the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice, i.e., it is *reasonable*. *See, e.g., Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 417 (9th Cir. 1997)); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-76 (1985).

Specific jurisdiction over a tort defendant like Shire exists where the intended effects of the defendant's non-forum conduct were purposely directed at and caused harm in the forum state. *Calder v. Jones*, 465 U.S. 783, 788-90 (1984); *see Sinatra v. Nat'l Enquirer*, 854 F.2d 1191, 1195 (9th Cir. 1988) ("[T]he decisions of this court have interpreted the holdings of *Calder* and *Burger King* as modifying the purposeful availment rubric to allow 'the exercise of jurisdiction over a defendant whose only 'contact' with the forum is the 'purposeful direction' of a *foreign* act having *effect* in the forum state.'") (quoting *Haisten v. Grass Valley medical Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986)) (emphasis in original); *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 n.1 (9th Cir. 1995) (applying effects test to defamation, tortious interference with business relations, and intentional infliction of emotional distress claims). Thus with respect to tort claims, the effects test requires that the defendant have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co.,*

*Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

### B. Application

In essence, ProLink alleges that Shire knew Elumina and Clarke were running a fraudulent operation in Europe, that Shire negligently investigated the operation, and that Shire enabled the fraud by originating and selling the allegedly bad leases. (Doc. 1 ¶¶ 23, 28-35.) All of this undisputedly occurred in the UK. Indeed, the only agreement to which Shire was party was its agreement with Elumina to originate and sell the leases. (*Id.* ¶ 29.) According to the uncontradicted affidavit of John Worton, director and joint chairman of Shire, at no time did Shire ever have any contact with ProLink or conduct any business in Arizona. (Doc. 9-1 ¶¶ 16-23.) ProLink does not contest that Shire's sole connection to ProLink and Arizona was through its relationship with Elumina. Nevertheless, ProLink seeks to establish an Arizona connection by alleging that Shire knew ProLink had not been paid for the GPS units it sold to Elumina and that Shire's facilitation of the fraud resulted in ProLink not receiving payment. (*Id.* ¶¶ 32, 40, 49, 63.) Worton's affidavit expressly denies knowing about any fraudulent activity or that Elumina had not yet paid ProLink. (Doc. 9-1 ¶¶ 8, 11-12.)

To combat this evidence, ProLink submitted affidavits from several individuals, who claim that John Flounders, a director of Shire, worked closely with Clarke of Elumina throughout this process. (Doc. 11-1 ¶¶ 4-6; 11-2, O'Keefe Affidavit ¶¶ 4-9.) ProLink contends that the close relationship between Flounders and Clarke means that Flounders must have known the Elumina scheme was fraudulent. And as evidence that Flounders conspired with Clarke to conceal this fraud, ProLink attached a series of emails between Flounders and Clarke which appear to detail difficulties in securing ad revenues. (Doc. 11-2, Ex. D at 16-22.) Finally, ProLink attached an affidavit from one of Clarke's employees who stated that in March 2008, Clarke received a telephone call from John Flounders in which Flounders apparently told Clarke that he had opened a bank account in Thailand for him. (Doc. 11-3 ¶ 4.) Clarke exclaimed "Well done mate, this is f---king great news" and "Now let those b---tards try and get my money." (*Id.* ¶¶ 3, 5.) Clarke's

- 6 -

employee thought Clarke was referring to "various people and creditors who were chasing him for payment" (*Id.* ¶ 6.) It is not made clear which creditors these are.

None of this evidence, however, creates a prima facie case for jurisdiction over Shire in an Arizona court. Even assuming, despite Worton's affidavit to the contrary, that Shire realized Elumina's marketing of the GPS units to European golf courses was fraudulent, that does not amount to Shire purposefully directing a *foreign* act to have an *effect* in Arizona or "expressly aiming" an act towards an Arizona entity.

Admittedly, the words "expressly aimed," standing alone, provide little guidance. "Express aiming is a concept that in the jurisdictional context hardly defines itself. From the available cases, we deduce that the requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct *targeted* at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft*, 223 F.3d at 1087 (emphasis added). ProLink alleges that Shire entered into an agreement with Elumina to facilitate a fraudulent arrangement (Doc. 1 ¶¶ 32, 40, 49, 63.) But the target of this allegedly fraudulent program was the golf courses and banks who bought the leases. Not paying ProLink for the GPS units it sold Elumina on credit may, presumably, have been part of Elumina's overall plan, but the Complaint does not allege at any length just what Elumina did or said to ProLink in procuring the sale on credit of the $4.5 million in GPS units that was fraudulent. That ProLink entered a bad bargain with Elumina is insufficient to provide a basis to recover in fraud against Shire, absent some allegation supported by fact that Elumina defrauded ProLink and that Shire was a part of that fraud. Elumina is not the Defendant that ProLink has named, but is a third party to this action. Thus, even assuming the Complaint seeks to allege that Elumina knew it would not pay for the units when it procured them, and misrepresented to ProLink its intent to pay for the units at that time, that still does not allege any act by Shire against ProLink.

The Complaint tries to avoid this by alleging that "Shire purposely directed its activities to Arizona and availed itself of the benefit of doing business with an entity (ProLink) that Shire knew to be headquartered in Arizona. Shire knew that Clarke

1 acquired GPS products from ProLink and that all of those products originated in
2 Arizona." (Compl. at ¶ 9.) It then goes on to allege that Shire knew that the fraudulent
3 scheme that it "deliberately facilitated" would and did cause substantial harm to ProLink
4 in Arizona. (*Id.* at ¶ 10.) But, even assuming that Shire had knowledge that Elumina
5 bought products that were manufactured in Arizona and leased by Elumina through Shire
6 to European golf courses, that knowledge does not mean Shire "targeted" ProLink in any
7 way sufficient for an Arizona court to obtain jurisdiction over Shire. Further, even
8 assuming—despite the Worton affidavit—that Shire was aware of fraudulent
9 representations made by Elumina to European golf courses, that general awareness does
10 not constitute sufficient knowledge to make a prima facie case that Shire wanted to target
11 ProLink.

12 The affidavits and emails submitted by ProLink in response to the Worrell
13 affidavit show that Flounders and Clarke had a close relationship and that Flounders
14 knew that Clarke received the GPS units from ProLink. None of these documents,
15 however, establish that Flounders and Shire were actively trying to harm ProLink.
16 Indeed, one of the emails in September 2008 from Flounders states that "Kevin [Clarke] .
17 . . has the knowledge of all deals the customer and the equipment" and "a statement of
18 account from Prolink which I believe was dated March 07 . . . stated at that date Eluminas
19 balance with prolink was Zero." (Doc. 11, Ex. 2, Ex. D at 17.)

20 Moreover, there is no evidence directly refuting Worton's statement that Shire did
21 not know about any fraud or remaining obligation to pay ProLink. ProLink assembled a
22 variety of inferences and innuendo that it contends adds up to evidence that Shire knew
23 of the fraud on the golf courses and banks (which it may), but this circumstantial
24 evidence is insufficient to carry ProLink's burden that *Shire* knew of any fraud directed
25 towards *ProLink*. ProLink must establish facts, through admissible evidence, that if true
26 would support personal jurisdiction over Shire. *See Ballard v. Savage*, 65 F.3d 1495,
27 1498 (9th Cir. 1995). Evidence from which inferences might be drawn about Elumina's
28 marketing of the GPS units to European golf courses, and Shire's knowledge of that

marketing scheme, do not sufficiently support any allegations of intentional targeting by Shire of ProLink sufficient to support jurisdiction here. There is no direct conflict between the affidavits. ProLink's submissions show only a close relationship between Shire's directors and Elumina. ProLink asks the Court to infer that the relationship means Shire must have known about some unspecified fraud perpetrated by Elumina against ProLink. The evidence, such as it is, fails to carry ProLink's burden at this stage to create a prima facie case for jurisdiction over Shire.

Other than bare conclusions in the Complaint—which the Court cannot credit in light of the affidavits submitted by both parties—ProLink has not presented any evidence that Shire intentionally sought to ensure that ProLink was not paid. In every case where express aiming has been found, there has been some direct "targeting" by the defendant toward the plaintiff—emails, letters, phone calls, publications, and the like. *See, e.g.*, *Bancroft*, 223 F.3d at 1087 (9th Cir. 2000) (describing cases). In all those cases, including the cases cited by ProLink in their Response, the defendants had the plaintiffs in their crosshairs when they acted. Based upon the Complaint and the evidence presented in the affidavits, that is simply not the case here. Accordingly, ProLink has failed to establish sufficient contacts between Shire and Arizona.

## CONCLUSION

There are insufficient contacts between Shire and Arizona to justify the exercise of this Court's jurisdiction over Shire. Accordingly, Shire's Motion to Dismiss for Lack of Personal Jurisdiction is granted.

**IT IS HEREBY ORDERED** that Defendant Shire's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 9) is **GRANTED.** The Clerk of Court is direct to terminate this action.

Dated this 15th day of October, 2012.

/s/ A. Murray Snow
/G. Murray Snow
United States District Judge